[Crim. No. 2728.   In Bank.—December 31, 1924.]

## THE PEOPLE, etc., Respondent, v. CLARENCE REID, Appellant.

[1] WRIT OF ERROR—WRIT OF CORAM NOBIS—NATURE OF—COMMON LAW—The office of the ordinary writ of error at common law was to remove the record of a case from an inferior to a superior court for the purpose of enabling the latter to review claimed errors of law appearing upon the face of the record; and the principal office of a writ of error *coram nobis* was to enable the same court which had rendered the judgment to reconsider it in a case in which the record still remained before that court.

[2] ID.—OFFICE OF WRIT OF CORAM NOBIS.—The function of the writ of *coram nobis* is to bring the attention of the court to, and obtain relief from, errors of fact, such as the death of either party pending the suit and before judgment therein; or infancy, where the party was not properly represented by guardian, or coverture, where the common-law disability still exists, or insanity at the time of the trial; or a valid defense existing in the facts of the case, but which, without negligence on the part of the defendant, was not made, either through duress or fraud or excusable mistake; these facts not appearing on the face of the record, and being such as, if known in season, would have prevented the rendition and entry of the judgment questioned; and in addition the writ would lie upon a judgment for error in the process or through default of the clerk.

[3] ID.—STATUTORY CHANGES—MOTION FOR NEW TRIAL—APPEAL.— At the time the writ of *coram nobis* came into general use there was no remedy by appeal or by motion for new trial, the ordinary writ of error affording to a considerable extent the remedy now available by appeal and the writ of error *coram nobis* to a very limited extent the remedy now available upon motion for a new trial, and these statutory remedies have supplanted the writ to the extent that they cover the subject, and the writ will not issue for any cause for which the statute provides a remedy.

[4] ID.—COMMON LAW—SUPPLANTING BY STATUTE—RULE.—Where the legislature has provided a statutory remedy which supplants in

1.  Scope and effect of writs of error, note, 91 **Am. Dec.** 193.
, *Coram nobis* in modern practice, notes, 3 **Ann. Cas.** 328; 18 **L. R. A.** 838; **L. R. A.** 1918A, 1178.
When writ *coram nobis* issues, notes, **Ann. Cas.** 1915A, 1287.   See, also, 2 **R. C. L.** 305–310; 2 **Cal. Jur.** 110, 113.

whole or in part a corresponding common-law remedy and has appended thereto a statute of limitations different from that which governs the common-law remedy, there is presented the situation of a conflict between the common law and the statute, in which case the latter must prevail.

[5] ID.—CRIMINAL LAW — MURDER — IRREGULARITIES IN TRIAL — WRIT OF CORAM NOBIS.—In a prosecution for murder where it is shown by affidavits of jurors that during the deliberation of the jury certain jurors, after having made up their minds to vote for a conviction with recommendation of confinement in the state's prison for life, a discussion arose between the jurors as to how long the defendant would be confined under such judgment and the jurors wrote a note to the trial judge requesting the information, after which the bailiff came into the jury-room and in the presence of all the jurors stated that the judge had said that life imprisonment was generally not over ten years, after which a ballot was taken and all the jurors voted for conviction with the death sentence, which affiants alleged they would not have done if they had not been informed that life imprisonment meant not over ten years, and which facts the defendant avers did not come to his or his attorney's knowledge until after the passing of sentence, the matters charged in the affidavits constitute irregularities occurring in the course of the trial and affecting the verdict which would have been remediable by motion for new trial and reviewable upon appeal therefrom, and a writ of *coram nobis* will not lie to review them.

[6] ID.—WHEN WRIT LIES.—The function of a writ of error *coram nobis* is to correct an error of fact, and it never issues to correct an error of law, nor to redress an irregularity occurring at the trial, such as misconduct of the jury, or of the court, or of any officer of the court (except under circumstances amounting to extrinsic fraud which in effect deprived the petitioner of a trial upon the merits).

[7] ID.—REMEDIES—MAXIMS.—The maxim "for every wrong there is a remedy" is not to be regarded as affording a second remedy to a party who has lost the remedy provided by law through failing to invoke it in time, even though such failure occurred without fault or negligence on his part.

[8] ID.—ATTACK ON JUDGMENT—TIME.—It is well settled at the English common law that a writ of error *coram nobis* will not lie in any case to attack a judgment after it has been affirmed by a higher court upon writ of error.

[9] ID.—PETITION—INSUFFICIENCY OF.—In a petition for a writ of error *coram nobis*, allegations that after the affirmance of a

---

6. Writ of error *coram nobis* as remedy where plea of guilty entered under fraud, duress or mistake, note, 30 **A. L. R.** 686.

judgment or conviction of murder and the going down of the *remittitur* "petitioner came into possession of certain affidavits . . . ," copies of which were attached to the petition and "made a part thereof as though set out in full," are not equivalent to an allegation by the pleader of the facts recited in the affidavits.

[10] ID.—PLEADING—REFERENCE TO EXHIBITS.—Matters of substance necessary to be alleged in a pleading cannot be omitted and the defect supplied by reference to exhibits attached to and made a part thereof.

[11] ID. — VERDICTS — IMPEACHMENT BY JURORS. —Jurors are legally disabled to impeach their verdict by any means, whether it be by affidavits or by testimony or by extrajudicial statements, except only in the cases provided by statute, and the only exception so made in this state is the case of so-called "chance verdicts."

---

(1) 16 C. J., p. 1326, sec. 3118; 17 C. J., pp. 11, 12, sec. 3259.
(2) 34 C. J., pp. 393, 394, sec. 605, p. 395, secs. 606, 607, 608, p. 396, sec. 609, p. 397, sec. 612.　(3) 16 C. J., p. 1326, sec. 3118.　(4) 37 C. J., p. 700, sec. 19 (Anno.).　(5) 16 C. J., p. 1327, sec. 3118 (Anno.).　(6) 16 C. J., p. 1327, sec. 3118 (Anno.).　(7) 1 C. J., p. 986, sec. 94 (Anno.).　(8) 16 C. J., p. 1326, sec. 3118 (Anno.). (9) 16 C. J., p. 1327, sec. 3118.　(10) 31 Cyc., p. 563.　(11) 16 C. J., p. 1327, sec. 3118.

APPEAL from an order of the Superior Court of Los Angeles County denying an application for a writ of error *coram nobis.*　John P. Fleming, Judge.　Affirmed.

The facts are stated in the opinion of the court.

Wesley E. Martin and Ralph W. Smith for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

MYERS, C. J.—This is an appeal from an order denying an application to the court below for a writ of error *coram nobis* to vacate the judgment and grant a new trial.　The

---

10.　See 21 Cal. Jur. 44.

11.　Impeaching verdicts by affidavit of jurors, notes, 12 Am. Dec. 143; 24 Am. Dec. 475; 48 Am. Dec. 376; 3 Ann. Cas. 401; Ann. Cas. 1912A, 1205; Ann. Cas. 1918E, 287.

Admissibility of statement of juror subsequent to trial to impeach verdict, notes, Ann. Cas. 1913D, 1194. See, also, 27 R. C. L. 896.

defendant, Clarence Reid, was tried in May, 1923, in the superior court of Los Angeles County upon an information charging him with murder and his plea of not guilty thereto. The jury rendered a verdict of guilty of murder in the first degree without recommendation, and a motion for new trial having been made and denied, judgment was rendered and pronounced and upon appeal to this court the judgment and order denying a new trial were affirmed (*People* v. *Reid,* 193 Cal. 491 [225 Pac. 859]). Thereafter, and after the going down of the *remittitur* to the court below, one Gardner P. Wood filed therein, in behalf of said defendant Reid, a petition for a writ of error *coram nobis*. The facts alleged in said petition, after detailing the facts outlined above, are pleaded as follows:

"That subsequent to the date of fixing of the date of execution for August 22d, 1924, as aforesaid, petitioner came into possession of certain affidavits of jurors who had been sworn to try said cause and who did render the verdict in said cause, copies of which affidavits are hereto attached, marked Exhibits A, B, C, D, E and F and hereby made a part hereof as though set out in full. Petitioner alleges that the original affidavits of which Exhibits A, B, C, D, E and F are copies have been filed with the Governor of California with a petition for commutation of sentence for the said Clarence Reid and said originals are not available and for that reason are not presented herewith.

"Petitioner is informed and verily believes that the facts contained in said affidavits were not known to the court nor had the court been advised of them before the rendition of said judgment of death and had the court so known or been so advised the judgment therein would not have been pronounced.

"Petitioner alleges that the errors of fact assigned are consistent with the record in said case.

"Petitioner is informed and believes and therefore alleges that the facts contained in said affidavits were unknown to said defendant Clarence Reid and his attorneys and each of them at the time of the pronouncement of said judgment."

Attached to the petition are copies of six affidavits, each of which purports to have been made by one of the persons who served as trial jurors at the trial of said Reid. Appel-

lant has selected the following as fairly representative of the form and contents of all of said affidavits:

"Irene W. Dye, being first duly sworn, deposes and says:

"That she was one of the Jurors who sat as such at the trial of the defendant, Clarence Reade, also Known as Tuffy Reade. That deponent after the case had been submitted to the Jury and the Jury had retired for deliberation and she had made her mind to vote for a conviction with the recommendation that the said defendant, Clarence Reade, be confined to the State Prison, San Quentin, for the period of his natural life, a discussion arose between the jurors as to how long would the defendant be detained if that recommendation was made, and in order to obtain the information, deponent wrote a note addressed to the Presiding Judge of that Department, Sidney N. Reeve, asking for the information above stated, to wit, how long would the defendant be kept at San Quentin if sentenced for life. Thereafter, the Bailiff, Clark Reeder, of said Court came into the Jury Room and in the presence of all of the Jurors, stated to the deponent that the Judge had said that life imprisonment was generally not over ten years. That upon being so informed upon the next ballot being taken, all of the jury voted reluctantly for the death sentence.

"Deponent further states that if she had not been informed that life imprisonment meant not over ten years, she would not have voted for the death penalty."

It is appellant's contention in effect that the writ of error *coram nobis* is a well-established common-law remedy which was carried into the law of this state by force of chapter 95 of the statutes of 1850, codified as section 4468 of the Political Code, and that this remedy is therefore available in this state and applicable to all cases within its purview as to which it has not been supplanted by the enactment of some other and different statutory remedy. In this connection appellant relies upon such cases as *Martin* v. *Superior Court,* 176 Cal. 289 [L. R. A. 1913B, 313, 168 Pac. 135], *Farrell* v. *City of Ontario,* 39 Cal. App. 351 [178 Pac. 740], *Barnes* v. *District Court of Appeal,* 178 Cal. 500 [173 Pac. 1100], *Nathan* v. *Porter,* 36 Cal. App. 356 [172 Pac. 170], and *Siminoff* v. *Goodman & Co.,* 18 Cal. App. 5 [121 Pac. 939]. It appears from the record that the application for the writ was denied by the court below because of the conclusions of

the learned judge that he was without jurisdiction to grant it. Appellant argues that the sole question to be determined therefore on this appeal is whether the court in which the defendant was tried can entertain a petition for this writ. He suggests that the question whether or not the writ will lie under the facts as stated in the petition is not a question necessary to be determined upon this appeal, but we are not disposed to adopt this suggestion. The substance and effect of the order appealed from is a denial of the application for the writ, and the question for us to determine is whether that order was correct or erroneous, and not whether the reasoning which led to its rendition was sound or otherwise. If the order appealed from was erroneous for any. reason appearing of record, it should be reversed, and if it was correct for reasons appearing of record, it should be affirmed. We may assume or concede that the court below had jurisdiction to entertain an application for this writ and to grant the same in a proper case, yet if the showing made was wholly insufficient to invoke the exercise of that jurisdiction, or if the facts stated in the application therefor make a case wholly outside of the scope of the writ, the order should be affirmed, regardless of the soundness of the reasoning which led to the denial of the petition. It becomes important, therefore, to consider the nature, scope, and limitations of the remedy which was afforded at common law by means of this writ, and we agree with appellant that for this purpose it is proper to have recourse not alone to the English cases, but also to cases, both prior and subsequent to 1850, in the American courts of those states which follow the common law.

[1] The office of the ordinary writ of error at common law was to remove the record of a case from an inferior to a superior court for the purpose of enabling the latter to review claimed errors of law appearing upon the face of the record. The principal office of the writ of error *coram nobis* was to enable the same court which had rendered the judgment to reconsider it in a case in which the record still remained before that court. The conventional language of this writ in the King's Bench makes reference to the record "which remains before us [the king], *quae coram nobis resident.*" In the Common Pleas the form of the writ was *coram vobis,*" "before you" (the judges). The most comprehen-

sive statement of the office and function of this writ which has come to our notice is the following from 5 Encyclopedia of Pleading and Practice, at page 27: [2] ''The office of the writ of *coram nobis* is to bring the attention of the court to, and obtain relief from, errors of fact, such as the death of either party pending the suit and before judgment therein; or infancy, where the party was not properly represented by guardian, or coverture, where the common-law disability still exists, or insanity, it seems, at the time of the trial; or a valid defense existing in the facts of the case, but which, without negligence on the part of the defendant, was not made, either through duress or fraud or excusable mistake; these facts not appearing on the face of the record, and being such as, if known in season, would have prevented the rendition and entry of the judgment questioned.'' In addition to the scope of this writ as above stated, it would lie upon a judgment in the King's Bench for ''error in the process or through default of the clerk'' (Tidd's Practice, p. 1137; note to *Jaques* v. *Cesar*, 2 Saund. 101). This appears to refer to such cases as where the clerk had improvidently issued a writ of execution upon a judgment which had been rendered but had not yet been entered (Poph. 181). Or where an execution had been inadvertently issued and levied after the granting of a *supersedeas*, and where a default had been inadvertantly entered before the expiration of the time to plead, or had been predicated upon a false return of service of process (Fitzherbert, Natura Brevium, p. 49, and note). It would also lie at the early common law where an ordinary writ of error had served the purpose of transferring the record from an inferior to a superior court and then had been quashed for any fault in the process other than variance (Tidd's Practice, p. 1137). This use of the writ was rendered obsolete by the Statute 5 George I, chapter 13, providing for the amendment of all defective writs of error (2 Saund. 101a, note). [3] At the time this writ came into general use there was no remedy by appeal or by motion for new trial. The ordinary writ of error afforded to a considerable extent the remedy now available by appeal and the writ of error *coram nobis* to a very limited extent the remedy now available upon motion for new trial. As these new remedies have come into existence by statutory enactment they have supplanted this ancient

writ as to so much of its former scope as is comprehended in and covered by the statutory remedies. The matters charged in the affidavits herein constitute irregularities occurring in the course of the trial and affecting the verdict which would have been remediable by motion for new trial and reviewable upon appeal therefrom. This the appellant frankly concedes. If the information thus charged to have been irregularly obtained by the jurors be regarded as information upon a matter of fact, it amounted to the receiving of evidence out of court. If it be regarded as information or instructions upon a matter of law, it was a violation of Penal Code, section 1138, amounting to misconduct of the jury. In either view it was remediable by a motion for new trial (Pen. Code, sec. 1181, subds. 1, 2). This being true, it follows that the common-law remedy has been supplanted and excluded by the statutory remedy in all cases to which the latter is applicable. All of the cases which have come to our attention concur in the conclusion that the writ will not issue for any cause for which the statute provides a remedy and that its functions are strictly limited to an error of fact for which the statute provides no other remedy. In *Sanders* v. *State*, 85 Ind. 318 [44 Am. Rep. 29], relied upon by appellant herein as the leading American case upon this subject, the supreme court of Indiana, after an exhaustive consideration of the subject, summed up its conclusions upon this point as follows:

"It is our opinion that the courts have the power to issue writs in the nature of the writ *coram nobis*, but that the writ cannot be so comprehensive as at common law, for remedies are given by our statute which did not exist at common law—the motion for a new trial and the right of appeal—and these very materially abridge the office and functions of the old writ. These afford an accused ample opportunity to present for review questions of fact, arising upon or prior to the trial, as well as questions of law; while at common law the writ of error allowed him to present to the appellate court only questions of law. Under our system all matters of fact reviewable by appeal, or upon motion, must be presented by motion for a new trial, and cannot be made the grounds of an application for the writ *coram nobis*. Within this rule must fall the defense of insanity as well as all other defenses existing at the time of the com-

mission of the crime. Within this rule, too, must fall all cases of accident and surprise, of verdicts against evidence, of newly discovered evidence, and all like matters."

That such is the rule in this state is definitely settled by the case of *People* v. *Mooney,* 178 Cal. 525 [174 Pac. 325], wherein it is said: "But where remedies exist by statute which did not exist at common law, the office and function of the writ are abridged thereby, and in such cases the writ is unavailable. These remedies are the right to appeal and to make a motion for a new trial, and, where they are provided by statute, to that extent an application for a writ of *coram nobis* cannot be entertained. It is in those cases where the defendant has been denied a trial upon the merits, in other words, where there has been no trial at all, that relief of this kind may be granted. In such cases it is obvious that the statutory remedies have no application and that defendant is wholly without remedy; and it is upon that theory that we look to the common law to provide a remedy. Such a case was *People* v. *Perez,* 9 Cal. App. 265 [98 Pac. 870]; and, indeed, all of the cases cited, in which relief was afforded, were cases where no trial had been had, but a plea had been obtained from the defendant by some character of duress, or the trial was affected by some outside force."

Appellant concedes that the provision of a statutory remedy impliedly displaces the common-law remedy to the extent that the former is available, but argues that where the statutory remedy is unavailable by reason of the statute of limitations applicable thereto, that the common-law remedy should then be applied. He argues that because the defendant did not discover the facts here relied upon until too late to present them in support of his motion for new trial, the statutory remedy should be deemed "unavailable" and the common-law remedy should therefore be resorted to. He cites no authority which supports this conclusion and we are convinced that it is not sound. [4] Where the legislature has provided a statutory remedy which supplants in whole or in part a corresponding common-law remedy and has appended thereto a statute of limitations different from that which governs the common-law remedy, there is presented the situation of a conflict between the common law and the statute, in which case the latter must prevail. To hold in such case that after the expiration of

the statutory limit the common-law remedy could still be availed of would be to hold in effect that in case of conflict between the two the common law prevails over the statute. This question also is settled in this state by *People* v. *Mooney,* *supra.* In that case as in this it was shown that the facts upon which the relief was sought were not discovered until after the motion for new trial had been denied, and this court said: "The remedy in such case is by motion for a new trial, and if newly discovered evidence is too late in its production, its consideration cannot be brought about under the guise of a motion to vacate the judgment upon the ground of fraud." It is true that in the Mooney case there existed additional reasons why it was held that the application was properly denied, but the conclusions here referred to were among the grounds upon which that decision rested and cannot be regarded as *obiter dicta.* [5] We conclude, therefore, that the existence of a statutory remedy for the wrong here complained of by motion for a new trial precludes a resort to the common law in this behalf.

[6] But apart from this, we are of the opinion that the remedy here sought would not be available at the common law upon the showing here made, even though no such statutory remedy had been provided. The uniform conclusion of the decisions is that the function of a writ of error *coram nobis* is to correct an error of fact. It never issues to correct an error of law nor, so far as we have been able to ascertain, has it ever issued to redress an irregularity occurring at the trial, such as misconduct of the jury, or of the court, or of any officer of the court (except under circumstances amounting to extrinsic fraud which in effect deprived the petitioner of a trial upon the merits). Counsel for appellant with commendable industry has collated and presented for our consideration a large number of cases involving the application of this writ, and in addition to a consideration of these cases we have made some independent investigation of the subject. The cases wherein the writ has issued, or relief equivalent thereto has been afforded, all seem to fall within one of the following classes: Where the defendant was insane at the time of trial and this fact was unknown to court and counsel (*Hydrick* v. *State,* 104 Ark. 43 [148 S. W. 541]; *Linton* v. *State,* 72 Ark. 532 [81 S. W. 608]; *Withrow* v. *Smithson,* 37 W. Va. 757 [19 L. R. A. 762, 17

S. E. 316] ; *Howie* v. *State,* 121 Miss. 197 [10 A. L. R. 205, 83 South. 158]). Where defendant was an infant and appeared by attorney without the appointment of a guardian or guardian *ad litem* (*Powell* v. *Gott,* 13 Mo. 458 [53 Am. Dec. 153] ; *Camp* v. *Bennett,* 16 Wend. (N. Y.) 48; *DeWitt* v. *Post,* 11 Johns. (N. Y.) 460). Where the defendant was a *feme covert* and her husband was not joined (*Roughton* v. *Brown,* 8 Jones (N. C.), 357). Where the defendant was a slave and was tried and sentenced as a free man (*Ex parte Toney,* 11 Mo. 661). Where the defendant was dead at the time judgment was rendered (*James* v. *Williams,* 44 Miss. 47; *State* v. *Riley,* 219 Mo. 667 [118 S. W. 647]). Where default was entered against a defendant who had not been served with summons and who had no notice of the proceeding (*Jeffery* v. *Fitch,* 46 Conn. 601; *Wynne* v. *Governor,* 1 Yerg. (Tenn.) 149 [24 Am. Dec. 448] ; *Merritt* v. *Parks,* 25 Tenn. 331). Where counsel inadvertently entered an unauthorized appearance in behalf of a defendant who had not been served with process (*Craig* v. *Smith,* 65 Mo. 536). Where a plea of guilty was procured by extrinsic fraud (*Ernst* v. *State,* 179 Wis. 646 [30 A. L. R. 681, 192 N. W. 65]). Where a plea of guilty was extorted through fear of mob violence (*State* v. *Calhoun,* 50 Kan. 523 [34 Am. St. Rep. 141, 18 L. R. A. 836, 32 Pac. 38] ; *Alexander* v. *State,* 20 Wyo. 241 [Ann. Cas. 1915A, 1282, 123 Pac. 68] ; *Sanders* v. *State,* 85 Ind. 318 [44 Am. Rep. 29] ; *Trattner* v. *State,* 185 Ind. 188 [113 N. E. 243] ; see, also, *People* v. *Perez,* 9 Cal. App. 265 [98 Pac. 870]). Where defendants and their counsel were induced by false representations to remain away from the trial under circumstances amounting to extrinsic fraud (*Cross* v. *Gould,* 131 Mo. App. 585 [110 S. W. 672, 676]). Where by the failure of the clerk to properly file an answer the party was deprived of his defense (*Jones* v. *Pearce,* 12 Heisk. 281). It appears that in each case where the writ of error *coram nobis* has issued to vacate a judgment it has been upon the ground that such judgment was predicated upon the assumed existence of a fact or a condition which did not in truth exist and the nonexistence of which would have prevented the rendition of the judgment if it had been known. We find nothing in the authorities to justify the conclusion that this remedy has ever been available for the correction of an irregularity occurring at

the trial, such as is here complained of. [7] The maxim, "for every wrong there is a remedy" (Civ. Code, sec. 3523) is not to be regarded as affording a second remedy to a party who has lost the remedy provided by law through failing to invoke it in time—even though such failure accrued without fault or negligence on his part. This is made clear by the cases of *People* v. *Mooney, supra,* and *People* v. *Superior Court,* 190 Cal. 624 [213 Pac. 945].

[8] It seems to be well settled at the English common law that a writ of error *coram nobis* will not lie in any case to attack a judgment after it has been affirmed by a higher court upon writ of error (*Prior* v. ———, 1 Vent. 207; *Hopkins* v. *Weigglesworth,* 2 Lev. 38; *Mills* v. *Wilkins,* 3 Salk. 333; *Hopkins* v. *Prior,* 3 Keb. 28; *Lambell* v. *Pretty John,* 2 Strange, 690). As an appeal under our code is a substitute for the common-law writ of error it would seem to follow that this writ should not lie in any case after an affirmance of the judgment upon appeal. But we do not rest our decision upon this ground, as this rule of the English courts seems to rest upon the highly technical rules governing the issuance and functions of the several writs.

[9] We have considered this case thus far upon the assumption that the facts of the case are as stated in the affidavits of the several jurors. But there is nothing in the record herein which is legally sufficient to justify either this court or the trial court in making such assumption. It is to be noted that the petition herein does not itself allege any facts showing misconduct of the jurors or tending to impeach their verdict. All that it alleges in his behalf is that after the affirmance of the judgment and the going down of the *remittitur* "petitioner came into possession of certain affidavits . . . ," copies of which were attached to the petition and "made a part thereof as though set out in full." This is not equivalent to an allegation by the pleader of the facts recited in the affidavits. [10] Matters of substance necessary to be alleged in a pleading cannot be omitted and the defect supplied by reference to exhibits attached to and made a part thereof (*City of Los Angeles* v. *Signoret,* 50 Cal. 298; *Hayt* v. *Bentel,* 164 Cal. 680, 686 [130 Pac. 432]; *Silvers* v. *Grossman,* 183 Cal. 696, 700 [192 Pac. 534]). There is nothing in the petition which indicates that the petitioner intended to adopt and make his own the allega-

tions contained in the affidavits, or that he intended to himself allege under oath the existence of the facts there recited. The petitioner has not even alleged as a fact that the persons named in the several affidavits ever subscribed or swore to them. We will assume, however, that these defects could and would have been cured by petitioner, had they been called to his attention in the court below, and for that reason we will disregard them. There is, however, another and more fatal defect in petitioner's case which appears to be incurable. His claim to relief rests solely upon the affidavits of jurors, the necessary effect and sole purpose of which is to impeach their verdict, but it is well settled that the testimony of jurors is utterly incompetent for this purpose. [11] Upon well-grounded considerations of public policy jurors are legally disabled to impeach their verdict by any means, whether it be by affidavit or by testimony or by extrajudicial statements (*People* v. *Azoff,* 105 Cal. 632, 635 [39 Pac. 59] ; *People* v. *Findley,* 132 Cal. 301, 308 [64 Pac. 472] ; *Saltzman* v. *Sunset T. & T. Co.,* 125 Cal. 501, 504 [58 Pac. 169] ; *Fredericks* v. *Judah,* 73 Cal. 604, 607 [15 Pac. 305] ; *Siemsen* v. *Oakland S. L. & H. Elec. Ry.,* 134 Cal. 494, 498 [66 Pac. 672]). This is the general rule throughout the United States and it is almost universally held that the only exceptions to it are those in which the legislature of the several states have by express enactment authorized such attack upon the verdict (see notes to 5 L. R. A. 523; 11 L. R. A. 706; 12 Am. Dec. 143; 29 Cyc. 982). The only exception so made in this state is in the case of so-called "chance verdicts" (Code Civ. Proc., sec. 657, subd. 2).

We conclude for the reasons above indicated that the petitioner is not entitled to the relief here applied for and that the order of the trial court denying the application was, therefore, correct. While the case of *People* v. *Superior Court, supra,* involved a different question and is, therefore, not controlling herein, some of the language of the opinion in that case is peculiarly appropriate to the present situation. We there said: "It is very clear to the court there is no law sustaining this application for an injunction [for a writ of error *coram nobis*], and that there is no relief other than an application to the Governor for a pardon. The constitutional grant to the Governor of the right to pardon is to enable the state to do justice in those cases where the

ordinary procedure results in injustice in individual cases by reason of extrinsic fraud or for any other reason.'' The fact that such an application in behalf of this defendant was made to the Governor (upon the same ground here relied upon) and was by him denied may be taken to indicate that after an investigation of the facts, which he is empowered and qualified to make in such a situation, the Governor was of the opinion that the facts were not such as to justify the granting of relief. That application was indorsed by the justices of this court in order to enable the Governor to grant the relief sought, if in his judgment the facts found upon such investigation should warrant it. The courts are not empowered to make such investigation under the circumstances here obtaining. The defendant has exhausted all of the remedies available through the courts and their office herein has terminated.

The order appealed from is affirmed.

Shenk, J., Richards, J., Seawell, J., Lawlor, J., Lennon, J., and Waste, J., concurred.