[Crim. No. 2149.   Third Dist.   Nov. 9, 1949.]

THE PEOPLE, Respondent, v. RICHARD THOMPSON, a Minor, etc., Appellant.

George T. Davis and Kenyon C. Keller for Appellant.

Fred N. Howser, Attorney General, and C. J. Scott, Deputy Attorney General, for Respondent.

ADAMS, P. J.—On June 10, 1948, Richard Thompson, a boy then 13 years of age, after having pleaded guilty to the charge of murder, was adjudged guilty of murder of the first degree. He was then, and had been since his arrest in April, represented by counsel of his own or his parents' choosing. No appeal was taken from the judgment, nor was any motion made to set it aside and permit the defendant to enter a plea of not guilty until February 1, 1949, when this proceeding was commenced in the Superior Court of Napa County by new counsel presumably hired by the boy's parents.

The motion, to set aside the judgment and permit the defendant to withdraw his plea of guilty and enter a plea of not guilty, was heard by the trial court and denied. This appeal followed. Such a motion is of the nature of an application for a writ of error *coram nobis*. (See *People* v. *Mooney,* 178 Cal. 525, 528 [174 P. 325]; *In re Paiva,* 31 Cal.2d 503, 504 [190 P.2d 604]; *People* v. *Tuthill,* 32 Cal.2d 819, 821 [198 P.2d 505]; *People* v. *Adamson,* 34 Cal.2d 320, 325 [210 P.2d 13]; *People* v. *Gilbert,* 25 Cal.2d 422, 439 [154 P.2d 657]; *In re Lindley,* 29 Cal.2d 709, 726 [177 P.2d 918]; *People* v. *Martinez,* 88 Cal.App.2d 767, 772 [199 P.2d 375] (hearing in Supreme Court denied); *People* v. *Shorts,* 32 Cal.2d 502, 516 [197 P.2d 330].)

Under the foregoing decisions a writ of error *coram nobis* is a remedy of narrow scope. Its purpose is "to secure relief where no other remedy exists from a judgment rendered while there existed some fact which would have prevented its rendition if the trial court had known it and which, through no negligence or fault of the defendant, was not then known to the court." The applicant for such writ must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ. Otherwise he has stated no ground for relief. (*People* v. *Adamson, supra,* at p. 327.)

On such a motion the court is not bound to accept at face value the allegations of the petition. (See *People* v. *Adamson, supra,* at p. 330, quoting from *Taylor* v. *Alabama,* 335 U.S. 252, 262 [68 S.Ct. 1415, 92 L.Ed. 1935].)

In *People* v. *Shorts, supra,* at pages 508-510, as in other cases above cited, it was said that one seeking relief by way of writ of error *coram nobis* must show that he has been prompt and diligent in seeking such relief, and "that the controlling fact upon which he relies in that proceeding was

not known to him at the time he was tried and convicted,''
and ''could not in the exercise of due diligence have been
discovered by him at any time substantially earlier than the
time of his motion for the writ.''

In *People* v. *Tuthill, supra,* at pages 821-822, the court
quoted from *People* v. *Reid,* 195 Cal. 249, 255 [232 P. 457,
36 A.L.R. 1435], as follows: ''The office of the writ of *coram
nobis* is to bring the attention of the court to, and obtain relief
from, errors of fact, such as . . . *a valid defense existing in
the facts of the case, but which, without negligence on the
part of the defendant,* was not made, either through duress
or fraud or *excusable mistake;* these facts not appearing on
the face of the record, and being such as, if known in season,
would have prevented the rendition and entry of the judg-
ment questioned.''

In *In re Lindley, supra,* the narrow scope of review on writ
of error *coram nobis* is asserted. Its availability to reverse a
judgment obtained by fraud, coercion or duress, or where a
plea of guilty was procured by force, violence, or intimida-
tion, or where at the time of the trial the defendant was in-
sane, when such facts were unknown to the court when the
judgment was entered, or where the accused was prevented
by fraud, force or fear from presenting defensive facts which
could have been used at the trial, when such facts were not
known to the court when the judgment was entered, is stated;
but it is also said that it is not broad enough to reach every
case in which there has been an erroneous or unjust judg-
ment; that matters reviewable by appeal, or upon motion,
must be presented by motion for a new trial, and cannot be
made the grounds of an application for the writ of *coram
nobis.* It also said that within this rule must fall the defense
of insanity as well as other defenses existing at the time of
the commission of the crime. The court then noted that the
plea of not guilty by reason of insanity was not raised at
Lindley's trial, and added that if he was insane at the time
of the hearing on the writ the procedure specified by sections
3700 et seq., of the Penal Code should be followed.

*People* v. *Martinez, supra,* was a proceeding similar to the
one before us, as Martinez sought the vacation of a judgment,
and the withdrawal of his plea of guilty, on the grounds,
among others, that he did not understand the import of his
plea and thought he was pleading guilty to second degree
murder, and that the evidence was insufficient to show first

degree murder. The court denied the writ and was affirmed on appeal, the appellate court stating that the record showed defendant to have been represented by counsel of his own choice, and that when the trial court fixed the degree of the crime defendant was asked whether he had any legal cause to show why judgment should not be pronounced, and stated he had none. The court said, page 771: "The writ of error *coram nobis* never issues to correct an error of law, nor to redress an irregularity occurring at the trial that could be corrected on motion for new trial or by appeal. It is issued to correct an error of fact, existing at the time of trial but unknown to the trial court through no fault of the petitioner, and which fact, had it been known, would have resulted in a different judgment, or would have prevented the rendition of the challenged judgment. [Cases cited.]" It was then held that the matters relied upon by petitioner were not sufficient to justify issuance of the writ, and the court said that such a motion should be applied for at or near the time of moving for a new trial.

Appellant's grounds for reversal in the instant case are that he should be granted relief because of his age; because there is a serious doubt of his guilt and doubt as to his sanity when the plea was entered; that the plea was entered through inadvertence, ignorance and mistake, without due deliberation and against his volition, and that the judgment was void because he was never arraigned, the plea of guilty was not properly taken or entered, he was not arraigned for judgment, and that the superior court lacked jurisdiction because of a failure to comply with the juvenile court law, thus depriving him of his liberty without due process, in violation of the Fourteenth Amendment and article 1, section 13, of the California Constitution.

■ Appellant's age was known to all at the time of his sentence. Therefore it presents no fact which would have prevented the trial court from rendering judgment. ■ Doubt of appellant's guilt, if such there be, presents no ground for relief by way of writ of error *coram nobis*; and there was nothing before the trial court to raise a reasonable doubt of his guilt, since the acts charged were admitted by him and are undenied in the record. ■ As for his contention that the plea was entered through inadvertence, ignorance and mistake, without due deliberation and against appellant's volition, the record shows that appellant was at all times represented by able attorneys of whom the trial court said that they

had practiced law for many years and were "known to the Court to be skilled lawyers in criminal proceedings." The record also shows that appellant had been informed of his legal and constitutional rights by such counsel and by his parents also, before his plea was entered. It cannot be said that there was not ample time for due deliberation on the part of appellant and his parents and counsel before the plea was entered, for the record shows that the complaint was filed in the justice's court on April 17, 1948, and thereafter there were seven appearances in the various courts before the plea was entered on May 21, 1948; and that thereafter there were several appearances during which no question was raised as to the matters herein relied upon as justifying a withdrawal of the plea of guilty.

At the hearing on this proceeding the boy testified that when he entered the plea of guilty he had not talked to his attorneys about how he should plead; that he did not know what a plea of guilty meant. However, the court said to him: "Well, supposing you hit me in the nose and I said to you: 'Are you guilty of hitting me in the nose?'—Would you know what I meant?", and the boy answered "Yes." The court then said: "If you were guilty, it would mean that you did do it, wouldn't it?", and the answer was, "I guess so." The appellant also admitted, on cross-examination, that he did confer with his parents about whether he should plead guilty or not guilty before he did so; that he had discussed it with them "Quite a few times," but that he did not remember whether he had discussed with them that he had committed the act charged in the case.

Before sentence, and for the purpose of determining the degree of the crime, evidence was taken by the court during which testimony of admissions made by the defendant was introduced. It is not contended that these admissions were made under duress, threats, or promises, or that they were not voluntarily made. They show that on April 16, 1948, defendant gave the victim of the crime, a girl about 6 years of age, a ride home from school on his bicycle. When they arrived at a bridge over Napa Creek they went down under it, and defendant asked the child to take off her clothes, which she did. He then inserted his finger into her vagina and into her rectum, then ordered her to put on her clothes, which she refused to do. He stated that this made him mad, that he feared she would tell her mother, which she said she would do,

so he decided to kill her. He choked her with his hands and put her head under water until she quit kicking, whereupon he shoved her body into the water and it floated away. He at first denied that he had done more than molest the child as above stated; but in a later statement said that after he had kept her in the water until she stopped kicking he "took her up on the bank and played with her some more," for about five minutes; and that then "I stuck my private into hers"; that he held her up in a kneeling position with her arms over his back to do this, and inserted his penis into her about an inch. He then took her body down to the creek and dropped it into the water where it floated down, hid her clothes and went to his home.

His counsel now urges that because of his youth the appellant did not know that what he was doing was wrong, or that it was wrong to kill the child. But there is ample evidence to justify the conclusion of the trial court to the contrary. The boy's own statement that he decided to kill the girl because she said she would tell her mother showed consciousness of wrongdoing; and he admitted that he had been "kicked out" of one school the year before "for playing with girls," and looking at their privates; that the principal of the school threw him out when she heard of it, and that his parents gave him a spanking. And in contradiction of his contention that he did not know it was wrong to kill the girl, Mr. Becker, the principal of the Lutheran School, in which Richard was a sixth-grade pupil, testified that he taught the boy, and saw him every day, and that he was "convinced that Richard knew the difference between right and wrong. We teach the Ten Commandments, the moral law and we definitely taught him the Commandment 'Thou shalt not kill.' He knew that killing was wrong. I am sure of it."

As for the present contention that there was doubt of the appellant's sanity, we find no grounds for such conclusion. He produced no witness to testify to that effect, but did put into evidence a report dated October 23, 1948, signed by Dr. George Tarjan, Clinical Director at the Pacific Colony State Hospital at Spadra, to which hospital the boy had been referred by the Youth Authority for observation after the court had committed him to such Authority. That report is too long for repetition here, but the portion of it upon which appellant relies reads:

"It was the opinion of the staff that, on the basis of the past history of examination and investigation, the ordinary

methods of rehabilitation would not be sufficient for this boy. It was felt that he is in need of psychiatric care because his release to society without psychiatric care might carry the danger of repetition of similar acts. The staff felt that the diagnosis in this case should be psychopathic personality, mixed type (defective or psychopathic delinquency), normal mentality, M.A. 13, I.Q. 97. On that basis the staff recommended that the boy is a suitable subject for commitment to the appropriate institution of the Department of Mental Hygiene (Sonoma State Home) for care and treatment under the defective or psychopathic delinquency section of the Welfare and Institutions Code.''

That conclusion, if accepted at full face value, is far from a finding of insanity or even of subnormal mentality; and the report contains nothing showing that the boy was not guilty of the crime or that he was not aware of the wrongfulness of his acts. It does show a belief on his part ''that he could do anything as long as the parents' protection is [was] with him.''

Certainly the evidence before the trial court on the hearing of this petition shows nothing to justify appellant's contention that the denial of the motion to set aside the judgment and permit him to enter a plea of not guilty constituted an abuse of discretion.

Appellant's present attorneys were given full opportunity to present medical testimony as to the defendant's sanity, but failed to do so. Admittedly, what shall be done with a boy of defendant's age who commits first degree murder under circumstances such as appear in this case presents a difficult problem, but not one for determination in this proceeding. That the degree of the crime was properly fixed at first degree murder was amply proven, not only by the boy's admissions but by the report of the physician who performed the autopsy upon the body of the victim, which shows that the homicide was committed in the perpetration or attempted perpetration of rape (Pen. Code, § 189) ; and while the boy was under the age of 14 years, the evidence justifies the conclusion of the trial court that at the time of the commission of the crime charged, defendant knew its wrongfulness (Pen. Code, § 26) and that at the time he entered his plea he knew its import.

It is only in rare instances that an appellate court will reverse a decision of a trial court on the ground of abuse of discretion; and it cannot be said that discretion has been

abused where there is a conflict in the evidence or there is any evidence which supports the judgment of such court. See *Yost* v. *Johnson*, 91 Cal.App.2d 849 [206 P.2d 13] and cases therein reviewed.

As for the argument that the judgment is void because defendant was never arraigned, that the plea was not properly taken or entered, and that the court failed to comply with the juvenile court law, we have examined the record and conclude not only that these contentions are without sufficient foundation, but that they are matters not reviewable in a proceeding for the issuance of a writ of error *coram nobis.* (*People* v. *Adamson, supra,* at pp. 329-331.)

The order is affirmed.

Peek, J., and Thompson, J., concurred.

A petition for a rehearing was denied November 18, 1949, and appellant's petition for a hearing by the Supreme Court was denied December 8, 1949.