[Crim. No. 2641.   First Dist., Div. One.   June 5, 1950.]

THE PEOPLE, Respondent, v. G. GRANT INGLES, Appellant.

William A. Cleary for Appellant.

Fred N. Howser, Attorney General, Clarence A. Linn, Deputy Attorney General, and Alfred Del Carlo, Assistant District Attorney, for Respondent.

BRAY, J.—Appellant pleaded guilty to an information charging him with violation of section 476a of the Penal Code, a felony. After sentence to San Quentin thereon, and after the judgment of conviction became final, he petitioned the superior court for a writ of error *coram nobis*. From a denial of his petition he appealed.

### QUESTION PRESENTED

The main question presented is whether *coram nobis* will lie where a defendant pleads guilty to a crime charged in an information, which crime is a different one than that set forth in the complaint which initiated the proceeding in the committing magistrate's court.

FACTS

The facts are undisputed. On March 12, 1949, the prosecution of appellant was commenced with the filing in the municipal court of a complaint charging him with a violation of section 476 of the Penal Code, setting forth in substance that, with intent to defraud "De Ferrari & Peters," he feloniously made, passed, uttered and published a certain fictitious check, which was in words and figures as follows:

"Factory Payroll Check
THE NATIONAL COMPANY

Check
Number 3958

PAY Twenty Seven $$$$$$$ Cents 38 ¢¢¢¢¢¢¢
To the Order of        G. Grant Ingles
302-1503186 OD
46-02 N. W. Baker

Any Bank or Trust Co.
Anywhere                (signed) L. R. Prentez"

and said check was indorsed by said G. Grant Ingles in words and figures as follows:

"G. Grant Ingles
"2001 California St., San Francisco";

that there was no such firm as The National Company, which appellant well knew, and that appellant well knew that the check was fictitious.

Appellant waived a preliminary examination and the judge of the municipal court, on March 16, 1949, held the petitioner to answer "for the offense of 'Felony to-wit, *476-A* Penal Code.'" (Emphasis added.) Thereafter and on March 25, the district attorney filed an information in the superior court charging appellant with violation of 476a, Penal Code. The information did not set forth a copy of the check, but in substance charged that appellant, with intent to cheat "DE FERRARI & PETERS and BANK OF AMERICA, N. T. & S. A., a corporation," feloniously made, drew, uttered, and delivered to De Ferrari & Peters a check and draft for the payment of $27.38, drawn upon a bank, "to wit, BANK OF AMERICA," knowing at the time that he had not sufficient funds in, or credit with said bank to meet the check and draft upon its presentation for payment.

It will be noted that the charge of violating section 476a of

the Penal Code, that is, uttering a check on a bank without sufficient funds, is an entirely different crime than that charged in the complaint, namely, violating section 476, that is, uttering a fictitious check. The information also charged appellant with a prior conviction and incarceration.

On March 29 appellant was arraigned. The record shows that he was present with an assistant public defender who was appearing for appellant's attorney, Eyman. The reading of the information was waived. At the request of the attorney the time to plead was continued to April 5. On that day appellant was present without his attorney, who was engaged elsewhere. The district attorney stated that Mr. Eyman had requested that the matter be continued to April 8. This was done. On that day appellant was present with his counsel and pleaded "guilty of the offense charged," but denied the prior. Appellant waived time for pronouncement of sentence and then made a motion for probation. On May 9, appellant being present without counsel, the hearing of the probation report was continued to May 10.

On that day Attorney Eyman informed the court that appellant and his mother desired to substitute Attorney Sullivan, and that the latter desired the matter continued to the 12th. The court thereupon stated that it saw no necessity for a continuance, that the record showed that appellant had been "in trouble since 1943, at which time he was picked up in San Francisco at the request of his mother. He cashed a series of twenty checks and was in trouble not only in San Francisco, but in Denver and Oakland. His difficulties seem to stem from a bad family situation involving his mother and aunt. He has an extremely bad record. He has been given probation before, once for a period of five years, and every opportunity he has been given he has failed miserably. It is to be hoped that through proper psychiatric treatment which may be rendered to him while in the custody of the Youth Authority he might return as a normal member of society, and for that reason I am recommending he be referred to the Youth Authority for their consideration and possible acceptance."

The court made an order denying probation and then ordered the cause referred to the Youth Authority and continued the cause to May 24 "for report." On that day, appellant appearing without counsel, the cause was continued to May 27. On that day, the court stated: "I understand Mr. Sullivan, the defendant's lawyer, will not be here. However,

there is nothing he could do for this man if he were here, and I do not think the law requires that his attorney be present at this proceeding. This young man has applied for probation. He was referred to the Youth Authority and the Youth Authority has refused to accept him. The report of the Probation Department, with which the Court is familiar, indicates he has passed about twenty checks, totaling about $400 in San Francisco alone. He has been in trouble since 1943, exclusive of the trouble he had in the Army. He has been charged with armed robbery and burglary, and he offers no excuse other than to say he can't stop his depredations. It is the thought of the Court that through the medium of psychiatric and psychological studies, for whatever benefit they may be, which is dubious, some help might be accorded to him. However, the Youth Authority has advised the Court they do not believe he would be benefitted by their training and treatment. So, therefore, this Court has no other alternative than to deny the motion for probation.'' The court thereupon sentenced appellant to San Quentin. On June 9, in the absence of appellant, the district attorney moved for a dismissal of the prior conviction charged in the information. The motion was granted. As amended judgment of conviction under section 476a of the Penal Code and an amended sentence to San Quentin was then made by the court.

On August 22, appellant filed a petition for writ of error *coram nobis* on the grounds of the existence of facts which, had they been before the court, would have precluded the rendition of the judgment.

### THE DIFFERENCE IN OFFENSES

Unquestionably the crime for which appellant was held to answer and which was charged in the information, is entirely different from that charged in the complaint. To determine whether such fact justifies the relief of *coram nobis* it is necessary to consider the scope of the latter writ.

Appellant quotes the following language from 31 American Jurisprudence 323: ''A writ of coram nobis or coram vobis, where available, is used to obtain a review of a judgment where it appears that certain mistakes of fact have occurred which were not put in issue, were unknown to the court, and were not passed upon by it''; and relies principally upon that quotation and similar language taken from *People* v. *Reid,* 195 Cal. 249, 259 [232 P. 457, 36 A.L.R. 1435]. However, such language gives only a part of the test. The other part is set

forth in 31 American Jurisprudence 325 as follows: ''It is essential to the availability of the remedy of coram nobis or coram vobis that the mistake of fact relied upon for relief was unknown to the applicant at the time of the trial, and could not by the exercise of reasonable diligence have been discovered by him in time to have been presented to the court, unless he was prevented from so doing by duress, fear, or other sufficient cause, so that it was by no negligence or other fault of his that the matter was not made to appear at the former trial.'' It is not merely that a judgment is made upon the assumed existence of a fact or condition which did not in truth exist, and the nonexistence of which, if it had been known, would have precluded the rendition of the judgment, which justifies the issuance of the writ of *coram nobis*, but there is one additional requisite, namely, the existence of that fact must not have been known, and could not have been known to the appellant by the exercise of reasonable diligence. *People* v. *Shorts*, 32 Cal.2d 502 [197 P.2d 330], contains an exhaustive discussion of the principles of the ''extraordinary remedy'' (p. 506) of *coram nobis* as applied in this state. It is there said (p. 513): ''One who applies for a writ of *coram nobis* upon a ground such as the one here presented must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ; otherwise he has stated no ground for relief.'' As said in *People* v. *Adamson*, 34 Cal.2d 320, 326 [210 P.2d 13], *coram nobis* is a remedy of ''narrow scope. . . . Its purpose is to secure relief, where no other remedy exists, from a judgment rendered while there existed some fact which would have prevented its rendition if the trial court had known it and which, through no negligence or fault of the defendant, was not then known to the court. [Citations.]'' (See, also, *People* v. *Thompson*, 94 Cal.App.2d 578 [211 P.2d 1].)

Applying these tests, appellant is not entitled to the extraordinary relief sought. The fact that the charge for which he was held to answer and which was set forth in the information was different from that set forth in the complaint was readily apparent. While his attorney waived the reading of the information by the clerk (a matter of common practice), if the attorney and appellant did not read it or compare it with the charge in the complaint, it was such a lack of dili-

gence as would bar the right to *coram nobis*. Appellant and his attorney intended that he plead guilty to a felony arising out of the passing of the check in question. The one he pleaded to and the one he intended to plead to are of equal severity so far as punishment is concerned. His lack of diligence in discovering the mistake as to the particular crime was entirely his own fault. Appellant contends that his youth and the fact that his attorney was not present when he was sentenced constituted a reason for his not discovering the error. So far as his youth is concerned, his court experience as disclosed by the statements of the court as to his previous record proves that when he pleaded guilty he knew he was taking his chances as to whether he might be given probation or referred to the Youth Authority.

Appellant contends that at the time he pleaded he was a minor under great emotional stress and strain and was only vaguely aware of what was going on and imperfectly comprehended the meaning and effect of what was said and done. As to this contention the judge who presided when the plea was made as well as at the *coram nobis* proceeding, stated (referring to an offered stipulation that appellant, if present, would testify to being under stress, etc.) : ''I think he was perfectly aware of the nature of the proceedings which were taken and I certainly would not accept such a stipulation, based upon my own personal observation of the situation as it occurred. . . . I will accept it as a stipulation that he was under emotional stress and strain, that is, if he were here he would say he was under emotional stress and strain, I will accept that but I will not accept it as a fact.'' While, naturally, a defendant, whether young or old, who is required to plead to a charge of felony, is under considerable emotional stress and strain, that fact does not permit him to disavow his plea when he finds that the court is not as lenient with him as he thought it would or should be.

As to the absence of his counsel from court at the time of sentence, the record shows that with the exception of the time of plea, which is the most crucial time in court appearances of a defendant intending to plead guilty (crucial in the sense that he needs his attorney more then than thereafter) his attorney (and he had two in succession) did not appear. Appellant contends that at least on one occasion his attorney was ill. Had there been good reason for his nonappearance a showing could have been made, and a continu-

ance most likely granted. If refused, then a different complexion might appear on the face of the proceedings. Moreover, even if his counsel were present at the time the report recommending against probation and the later refusal of the Youth Authority to accept appellant were heard, it is doubtful if the attorney would have discovered the difference in the charge. The time to consider the information in its relation to the original charge was at the time of plea. Thereafter it is the action that the court will take on the plea upon which the attorney concentrates. If the attorney had not already discovered the error, ordinarily there would be nothing in the subsequent proceedings which would be likely to draw his attention to it.

There is another reason why *coram nobis* will not lie here. Section 995 of the Penal Code provides that the information must be set aside by the court, upon the defendant's motion, where "2. . . . the defendant had been committed without reasonable or probable cause." Committing a defendant for a different crime than that with which he is charged in the complaint unquestionably is commitment without probable cause. Section 996 provides: "If the motion to set aside the indictment or information is not made, the defendant is precluded from afterwards taking the objections mentioned in the last section." The appellant had the right to make such motion and did not do so. He is therefore barred from raising on *coram nobis* the matters that he should have raised on motion. (*People* v. *Coates,* 95 Cal.App.2d 78 [212 P.2d 263].) As said in *People* v. *Mooney,* 178 Cal. 525, 529 [174 P. 325]: " '. . . where remedies exist by statute which did not exist at common law, the office and function of the writ [*coram nobis*] are abridged thereby, and in such cases the writ is unavailable.' " While the Mooney case refers specifically to the statutory remedies of appeal and motion for new trial, the same theory applies to any other statutory remedies which a defendant has.

In this case, appellant had a number of statutory remedies which, had he used reasonable diligence, would have been open to him: Among others, the motion under section 995, a not guilty plea coupled with an objection to the introduction in evidence of the check as not being material to the crime charged in the information, or a motion in arrest of judgment at the time of sentence.

## Mistake in Plea

■ While it is true that appellant pleaded guilty to a crime of which there is no evidence of his guilt, he is in no different situation than was the defendant in *People* v.·*Moore,* 9 Cal.App.2d 251 [49 P.2d 615], where the defendant admitted four prior felony convictions and a judgment was entered of conviction on the primary charge and he was sentenced as an habitual criminal. Later, he found out that three of the prior convictions were not felonies in this state. He thereupon sought relief by *coram nobis.* The order of the superior court denying him such a writ was affirmed on appeal. It was held that this type of mistake cannot be cured by *coram nobis,* as defendant had open to him certain statutory remedies. The defendant contended that as he did not discover his mistake until too late to take advantage of the statutory remedies, the writ should lie. As to this contention the court stated (quoting from *People* v. *Reid, supra* [195 Cal. 249], at pages 257, 258) : ''Appellant concedes that the provision of a statutory remedy impliedly displaces the common-law remedy to the extent that the former is available, but argues that where the statutory remedy is unavailable by reason of the statute of limitations applicable thereto, that the common-law remedy should then be applied. He argues that because the defendant did not discover the facts here relied upon until too late to present them in support of his motion for new trial, the statutory remedy should be deemed 'unavailable' and the common-law remedy should therefore be resorted to. He cites no authority which supports this conclusion and we are convinced that it is not sound.'' The court then points out that the fact that a defendant, through his own mistake, pleads guilty to a crime of which he is innocent, does not entitle him to a writ of *coram nobis,* saying (p. 255) : ''We fail to see how the position of defendant in this proceeding is any different from that of a person who pleads guilty to a crime believing in fact that he was guilty of the same at the time of his plea, when, as a matter of law, the facts could not establish his guilt. In the latter situation a defendant would have the undoubted right to make a motion to change his plea. [Citations.] If, however, the defendant omits to do so, and the time has expired for the exercise of any of the statutory remedies after judgment, which might be invoked to cure the situation, and the judgment becomes final, there would be no further legal recourse by any form of judicial review. The same, we believe, is true in this case.''

It must be borne in mind when considering the fact that appellant has pleaded guilty to a crime of which apparently he is not guilty that it is not a situation in which a completely innocent person has inadvertently subjected himself to a jail sentence. Appellant intended to plead guilty to a felony and take his chances on the sentence which would follow. He merely pleaded guilty to a different crime (although not different as to penalty) than the one which he wanted to admit he committed.

### BAR TO SUBSEQUENT PROCEEDING

Appellant contends that his conviction could not be a bar to a subsequent prosecution on the original charge or of petty theft by trick and device for uttering and passing the instrument set forth in the complaint. It is unnecessary for us to determine that question at this time. If, and only if, an attempt is made to so prosecute him would that question become material.

The order is affirmed.

Peters, P. J., and Schottky, J. pro tem., concurred.