[Crim. No. 4281.  Second Dist., Div. Two.  Feb. 16, 1949.]

THE PEOPLE, Respondent, v. CHARLES V. KROUT, Appellant.

Charles V. Krout, in pro. per., for Appellant.

Fred N. Howser, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

MOORE, P. J.—Pursuant to all constitutional guaranties, legal forms and statutes in such cases made and provided, appellant was duly convicted of forgery on three counts. Judgments were entered October 22, 1947. Undaunted by the grim walls of the famous fog-bound prison he fell a victim to the dread disease sanquentinitis, an evil affection, which impels a certain type convict to strike for liberty despite the invisible ties that fix his mailing address for an indefinite period. He had reposed within his new abode in excess of eight months when he suffered a violent attack of the insidious malady compelling his fanciful though depraved imagination to conceive that he had been unjustly detained within the old gray fortress near the Golden Gate. Promptly upon the fructification of the violent virus he sprang into action.

In keeping with his seeming indifference to the shadows of passing events he stubbornly declined to pursue the dreary statutory route of new trial and appeal but took up arms against his sea of troubles by invoking the writ of error *coram nobis* whereby a faithful subject of his majesty was in mediaeval England brought before the King's Bench to have an adverse decree corrected after the time for appeal had elapsed. By his petition appellant related to the superior court (1) his burning desire to see justice done where it had been denied; consented again to take the stand; to have his brother, a codefendant, repeat his story with supplemental observations; and to call two other witnesses whose proposed contributions to the total proof he omitted from the petition. Also, he alleged (2) that at the time of the forgeries he had no intent to defraud and (3) that he was misrepresented by his counsel. After hearing duly had the court denied the writ, from which order comes this appeal.

While the petition is utterly devoid of every legal essential for the writ, the court below tried the factual issues raised by the prisoner. By his brief appellant now insists upon a reversal of the order on the grounds of (1) deceptive statements

to him by the People's counsel and his own, the public defender; (2) insufficiency of the evidence to sustain the three convictions; (3) misrepresentation by his counsel; (4) his conviction on the uncorroborated testimony of his accomplice despite the requirement of the Penal Code, section 1111. Inasmuch as points (2) and (4) are indubitably grounds for new trial and appeal, and therefore do not constitute reasons for the writ (see authorities, *post*), they will be omitted from further discussion.

In order to demonstrate the profound vacuity of appellant's argument for the issuance of the writ, the events established at the trial are here presented. On June 21, 1947, appellant and his brother Melvin together presented to each of two different persons a check of that date drawn on branch banks for a sum in excess of $30. Each check bore a fictitious signature and address. The first was payable to the brother Melvin Krout; the second to "Vernon C. Krout," an alias of appellant. Goods and money were received for both checks. Both men presented check 1 in payment for cash and merchandise; appellant alone cashed check number 2. Both branches were of the same bank. Both victims were proprietors of gasoline stations. The third check was for $57.10 dated June 27, 1947, drawn on a third branch of the same bank, payable to appellant and signed with a different name as maker. Appellant presented check 3 to the proprietor of the filling station which the brothers had entered together. Melvin stood behind appellant during the transaction. Expert testimony established that Melvin had written all the checks and that appellant had endorsed checks 2 and 3. Bank officials proved that none of the bank branches had an account under the names appearing as makers of the checks.

While held in durance vile on July 14, 1948, appellant told the arresting officer "that he was responsible for all of the trouble that he was in and that no one else could be blamed for it; he caused the checks to be drawn." But when the officer subsequently exhibited the three checks to him he could remember exactly nothing. "I was on a three-day drunk and I don't recall anything about the checks." However, Melvin, a witness for appellant, testified that they both decided to pass these bad checks to get more money to buy more liquor. On the witness stand, appellant had "a faint recollection of signing the checks . . . I never denied my hand writing." The three victims of the forgeries positively identified the brothers as their deceptive patrons. Witness

Taylor established that appellant presented check 1 and that the total amount was paid to appellant. Witness Barnett testified that appellant alone presented and cashed check 2. Witness Bailey proved that appellant presented and cashed check 3 while Melvin stood by. In each instance money and merchandise in the amount of the check were given in exchange therefor.

### THE LAW

The proposition that the writ of error *coram nobis* should be issued to enable a convicted person to show that he was deceived into waiving a jury (1) by promises made by either his own counsel or by the district attorney; or (2) by reason of his having been "misrepresented" by his own counsel, is not supported in law. ■ Discovery of new evidence is not ground for a *coram nobis* proceeding. (*People* v. *Knight,* 73 Cal.App.2d 532, 535 [166 P.2d 899].) Indeed, the writ is not available to review any matter which could have been considered on the hearing of a motion for a new trial. (*People* v. *Reid,* 195 Cal. 249, 256 [232 P. 457, 36 A.L.R. 1435]; *People* v. *Tuthill,* 32 Cal.2d 819, 822 [198 P.2d 505]; *People* v. *Young,* 88 Cal.App.2d 601 [199 P.2d 21]; *People* v. *Coyle,* 88 Cal.App.2d 967 [200 P.2d 546].) ■ The writ will not issue to hear newly discovered evidence on the merits or to retry factual issues once adjudicated notwithstanding the judgment may be erroneous. (*In re Lindley,* 29 Cal.2d 709, 725 [177 P.2d 918]; *People* v. *Tuthill, supra,* 822.) ■ The doctrine underlying the writ of error *coram nobis* does not contemplate that by the use of it a court may review and revise its judgments. (*People* v. *Mooney,* 178 Cal. 525, 528 [174 P. 325]; *People* v. *Gilbert,* 25 Cal.2d 422, 442 [154 P.2d 657].)

■ Appellant's complaint that he was misrepresented by his counsel is unavailing. His contention is that his attorney failed to elicit from Melvin whether appellant knew the checks to be forgeries, coerced him to waive a jury trial, made the defense of drunkenness without authority and refused to permit appellant to testify to the actual facts. Such contentions cannot under the cited authorities be considered in a *coram nobis* proceeding. If appellant had on a motion for a new trial verified the statements now asserted as grounds for reversal, to wit, that he had been misrepresented by his attorney and that the prosecuting attorney had promised him that the case would be dismissed if he would waive a jury, the court would have rejected them as inherently improbable. Any intelligent person on receiving the latter proposition

from the prosecuting attorney would instantly reply: "If my case is to be dismissed, I can waive trial by the court as well." ▮ But even granting the truth of appellant's statement, it is the law that procuring a defendant's waiver of a jury trial by any illegal means can be cured by the proceeding on a motion for a new trial and therefore furnishes no ground for a *coram nobis* proceeding. (*People* v. *Young, supra.*) ▮ As to the claim that his conviction rests upon the uncorroborated testimony of his accomplice, that also, if verified, would be disproved by the record of the trial and would affect a reversal on appeal if the motion for a new trial were denied. Conceding, arguendo, that there is no evidence of appellant's guilt except the testimony of Melvin Krout, appellant had two legal remedies for the correction of such error. Hence, on neither ground was he entitled to the writ. (See authorities, *supra.*)

### Appellant's Narrative

▮ Appellant's naive recital of what he did testify and of what he would testify upon a second trial concerning the events preceding and at the time of the trial discloses that he knew then everything that he knows now. Also, he knew then that the trial and appellate courts were open for the reparation of his grievances. He had a trial and called as witnesses all parties who had knowledge of his acts. He names persons he would call on a second trial but produces nothing in the form of affidavit and suggests nothing new and tangible. Only his own dereliction and laches are responsible for his predicament, conceding that he had cause for complaint. If his current statements were true, he could have prevented a judgment. (*People* v. *Mendez,* 28 Cal.2d 686, 688 [171 P.2d 425].) But his tactless delay for eight months, under the circumstances, forecloses him of all right to relief under his petition. (*People* v. *Shorts,* 32 Cal.2d 502, 512 [197 P.2d 330]; *People* v. *Egan,* 73 Cal.App.2d 894, 900 [167 P.2d 766]; *People* v. *Harincar,* 49 Cal.App.2d 594 [121 P.2d 751].)

The order is affirmed.

McComb, J., and Wilson, J., concurred.