[Crim. No. 696. Fourth Dist. Jan. 3, 1951.]

THE PEOPLE, Respondent, v. FRED C. MARINGER, Appellant.

Fred C. Maringer, in pro. per., for Appellant.

Fred N. Howser, Attorney General, and Donald D. Stoker, Deputy Attorney General, for Respondent.

MUSSELL, J.—Defendant was charged with, and found guilty of, the murder of Mrs. Eugenia Howell. Life imprisonment was recommended in the verdict of the jury and defendant was, on April 5, 1949, sentenced to the state prison. On February 8, 1950, he filed a "Notice and Application for a Writ of Error Coram Nobis. To set aside and vacate the judgment." The district attorney filed an affidavit in opposition to the application and after a hearing thereon, at which time defendant was represented by the public defender, the petition was denied. This appeal, presented in propria persona, is from the order of the court denying the application.

In the proceedings before the trial court on his application for a writ, defendant contended that it was not established in the trial that a murder had been committed and in support

of his contention, filed and submitted an affidavit denominated "Statement of Facts," as follows:

"I was convicted of murder in the first degree on circumstantial evidence.

"During my trial a photograph of the decedent was introduced by the State as evidence. This photograph bore marks, or discolorations on the throat of the decedent. The state contended that these marks, or discolorations, were resultant of manual strangulation.

"My attorney, during his attack on these marks cross examined a pathologist, one Dr. Baisinger, who had performed an autopsy on the decedent.

"During this cross examination this Dr. Baisinger admitted that he had returned a diagnosis of manual strangulation because the police of the city of Banning, California had TOLD him that the decedent had been strangled.

"No other professional testimony regarding the cause of death was produced in this case.

"It is therefore my contention that, at no time during my trial, had it been established that a murder had been committed."

In addition to the foregoing affidavit, defendant, in a separate document, claimed that he was deprived of his constitutional rights and of a fair and impartial trial; that the court erred by permitting the misconduct of the district attorney; that the verdict is contrary to the evidence; that the trial court erred in its decision of questions of law and in the improper admission of evidence.

The affidavit of the district attorney set forth at length the direct and cross-examination of the testimony of Dr. Baisinger relating to the condition in which he found the victim and the cause of her death. There was no contention before the trial court that the doctor's testimony, as set forth by the district attorney, was not a correct transcript thereof. The doctor testified that the victim died from strangulation and defendant's attack on his testimony is not sustained by the record. ▆ Moreover, this is merely an attack on the sufficiency of the evidence which is not within the scope of the writ here sought.

▆ The writ of *coram nobis* does not lie to correct error in the judgment of the court, nor to contradict or put in issue any fact directly passed upon and affirmed by the judgment itself and where the remedies of the right to appeal and to make a motion for a new trial are provided for by

statute, to that extent an application for a writ of error *coram nobis* cannot be entertained. (*People* v. *James,* 99 Cal.App.2d 476 [222 P.2d 117] ; *People* v. *Tuthill,* 32 Cal.2d 819, 822 [198 P.2d 505] ; *People* v. *Reid,* 195 Cal. 249, 256 [232 P. 457, 36 A.L.R. 1435] ; *People* v. *Coyle,* 88 Cal.App.2d 967 [200 P.2d 546] ; *People* v. *Young,* 88 Cal.App.2d 601 [199 P.2d 21].) The qualifications of medical experts are not reviewable in the proceedings herein (*People* v. *Goold,* 90 Cal.App.2d 640 [203 P.2d 118]) and on appeal objections may not be raised for the first time where they were not made at the trial. (*People* v. *Messerly,* 46 Cal.App.2d 718 [116 P.2d 781].)

In the proceedings before the trial court nothing other than the quoted ''Statement of Facts'' was offered to support the general allegations of error. The trial judge who heard the evidence in the case also presided at the hearing on the application for the writ, and, as is evidenced by his decision, considered all of the evidence produced at the trial, as well as the rulings made.

A summary of the evidence is set forth in the affidavit of the district attorney, as follows: Mrs. Eugenia Howell, the victim, lived in a small cabin at the Banning Auto Camp at Banning, California. She was a woman about 82 years of age and in poor health. On the date of the murder, January 3, 1949, Mrs. Howell had been to see her doctor relative to her asthmatic condition. At about 9 :30 in the evening the defendant came to Mrs. Howell's cabin to see an acquaintance of his, Mrs. Catherine Knight, who was looking after Mrs. Howell that evening. Defendant was in a drunken condition and was requested by Mrs. Knight to leave. This he refused to do. Mrs. Knight asked the defendant where her car was that he had borrowed earlier in the day and he stated he had left it out along the highway ''some place.'' Mrs. Knight then went out to locate her car and after finding it, returned to the cabin with her sister shortly before 11 p. m. An unsuccessful attempt was made to enter the cabin and Mrs. Knight then went to the residence of Harry Goldwasser, a short distance away, and informed him that there was a drunk in the cabin with Mrs. Howell.

Mr. Goldwasser, proprietor of the auto camp, called the police department and armed himself with a large rubber hose. He then went to Mrs. Howell's cabin and upon entering the door, saw the defendant astride the body of Mrs.

Howell, with both feet off the floor, and both knees on the edge of the bed. The defendant was clothed in only his socks and undershirt. (The other gruesome details of the appearance of the victim and the defendant are here omitted.) Mr. Goldwasser, seeing what he saw, knocked the defendant to the floor with the rubber hose. The defendant continuously pleaded with Mr. Goldwasser to "be a good fellow, give me a break, let me put my clothes on and go away." Two members of the Banning police department arrived within a few minutes and saw the condition of the defendant and the victim. At that time the defendant stated to one of the officers "What's all the excitement about? I raped the woman, so what?" Recent bruises were found on the neck of the victim, and Dr. Baisinger, a pathologist, who performed an autopsy on the body of Mrs. Howell, ascertained that her death was due to strangulation. The defendant, in his first reported statement to the officers, denied ever being in the cabin and claimed to have completely blacked out at noon on January 3, 1949, from excessive drinking. He claimed to know nothing that occurred after that hour. At the trial the defendant remembered everything that occurred that day to the extent of being in Mrs. Howell's cabin, but he claimed to have been in a very drunken condition and having passed out, upon awakening found the victim there dead.

The court, after a consideration of all the evidence, concluded that the defendant had a fair trial and a full and complete hearing, and stated that the evidence of defendant's guilt was overwhelming and the defendant was fortunate in that the jury recommended life imprisonment. There was no error in the order denying the application.

In an affidavit and a "Statement of Facts" in his opening brief on appeal, defendant again attacks the qualifications and testimony of Dr. Baisinger. He argues that he was inadequately defended by the public defender, particularly in that he was not protected by having a doctor of his own choice called as a witness and that the testimony of Dr. Baisinger was not otherwise properly opposed; that the evidence offered by the prosecution is in certain respects improbable and incredible; that the jury should have believed defendant's story; that the district attorney asked improper questions on cross-examination and made improper statements to the jury.

The various contentions set forth are entirely without merit. The record does not sustain defendant's contention

that he was inadequately defended by the public defender.

 Furthermore, such a contention cannot be considered in a *coram nobis* proceeding. (*People* v. *Krout,* 90 Cal.App.2d 205, 208 [202 P.2d 635].)

The contention as to the improbability of certain evidence introduced by the prosecution is directed principally to the testimony of one Harry Goldwasser as to what he saw upon entering the victim's cabin, and to the testimony of a public officer that he heard the defendant state "What's all the excitement about? I raped the woman, so what?".

Other claimed improbabilities are: (1) That it is "incredible" that defendant would have allowed himself to be found in the incriminating position by Mr. Goldwasser when the door of the cabin was unlocked and the lights were burning; (2) That the jury should have believed his story that he was undressed and helped to bed in Mrs. Howell's cabin; that he awakened thereafter and found her body on the same bed where he was lying; that he jumped out of bed to see what he could do to revive her; and that he was standing thus when Mr. Goldwasser burst into the cabin; (3) That it was improbable that he made the statement to Officer Bovin, "What's all the excitement about? I raped the woman, so what?" because he had just been beaten with a hose by Mr. Goldwasser and also because neither Goldwasser nor anyone else testified that he heard the statement in question; and, finally, that Mrs. Howell's watch was missing and appellant's watch and money "disappeared."

 Inherent improbability is not present unless there exists either a physical impossibility that the facts are true or when their falsity is apparent without resorting to inferences or deductions. (*People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758] ; *People* v. *Rivas,* 92 Cal.App.2d 663, 666, 667 [207 P.2d 1062] ; *People* v. *Lindsey,* 90 Cal.App.2d 558, 563 [203 P.2d 572].) Under the rules announced in these cases it is quite apparent that no inherent improbabilities were shown.

 The credibility of the witnesses and the weight to be given to their testimony were for the determination of the triers of fact. (*People* v. *Neal,* 97 Cal.App.2d 668, 673, 674 [218 P.2d 556] ; *People* v. *Murray,* 91 Cal.App.2d 253, 256 [204 P.2d 624].)

 All of the contentions presented relate to matters which were put in issue in the trial of the case and could

have been considered and passed upon on a motion for new trial or in an appeal from the judgment. No such motion appears to have been made and there was no appeal from the original judgment. Under such circumstances a writ of *coram nobis* does not lie.

The order is affirmed.

Barnard, P. J., and Griffin, J., concurred.