## STATE v. FORREST TELLOCK.

118 N. W. (2d) 347.

November 16, 1962—No. 38,642.

*Forrest Tellock,* pro se, for appellant.

*Walter F. Mondale,* Attorney General, *Charles E. Houston,* Solicitor General, and *James A. Wilson,* County Attorney, for respondent.

OTIS, JUSTICE.

Appeal from an order of the District Court of Hubbard County denying without a hearing defendant's petition for a writ of error coram nobis dated November 10, 1961.

Defendant was arrested on March 29, 1959, charged with the crime of rape,[1] and on March 30, 1959, appeared before a justice of the peace, waived preliminary hearing, and was bound over to the district court. Bail was fixed at $7,500, later reduced to $5,000.

On April 3, 1959, defendant retained an attorney, who thereafter represented him until he was sentenced and committed. In October 1959 defendant was arraigned in district court and pled not guilty. At the date set for trial, March 14, 1960, the county attorney informed the court that defendant was willing to plead guilty to the lesser charge of carnal knowledge.[2] The court then advised defendant that the crime of carnal knowledge was punishable by imprisonment up to 7 years, whereupon the defendant pled guilty and the court conducted a presentence examination.[3] Counsel stated that the plea was entered upon his advice and at his client's request. The court indicated he would require defendant to stand trial if he did not understand the seriousness of the offense, instructed defendant that on a plea of not guilty the state would have to satisfy a jury of his guilt beyond a reasonable doubt, and reminded him that he enjoyed a presumption of innocence. Defendant was asked whether he had been threatened or mistreated or promised leniency for a plea of guilty, to all of which inquiries defendant answered in the negative. Defendant then freely admitted in open court the details of the offense with which he was charged. After a presentence investigation defendant again appeared before the court with his attorney on May 2, 1960, at which time he was sentenced to a term of 7 years in the State Prison.

---

[1] Minn. St. 617.01.

[2] § 617.02.

[3] §§ 243.49 and 243.60.

The allegations on which defendant bases his right to a writ of error coram nobis are these: (1) That he was denied due process by being detained from March 29 until April 3 without access to counsel; (2) . that he was arraigned in justice court while handcuffed and shackled, and was obliged to waive preliminary hearing because he was denied legal assistance; (3) that there was collusion between his lawyer and the county attorney evidenced by the failure of his lawyer to interview the victim or her family; (4) that he was induced to plead guilty on the assurance that the county attorney would have no objection to a suspended sentence; (5) that no information charging him with the reduced crime of carnal knowledge was filed;[4] and (6) that the county attorney attempted to use the prosecution as a means of demanding support for one of defendant's former wives who was his client.

Assuming that writs of error coram nobis are available in appropriate criminal cases in this state, we hold that on the record before us the trial court was justified in denying defendant's petition without a hearing. We are not to be understood as condoning a denial of defendant's right to consult counsel promptly after his apprehension. But we have in mind the limited function of the writ; the fact that this is not an appeal from a judgment of conviction, in which nonjurisdictional errors may be reviewed; that defendant was represented throughout all of these proceedings by counsel of his own choice who was instrumental in securing a reduction in the charge;[5] that defendant has recited into the record the particulars of the offense; and that he had a period of 13 months between arrest and sentence in which to consider the advisability of entering a plea of guilty. In these circumstances we find that defendant has failed to make the kind of prima facie showing which may justify the issuance of this extraordinary writ, designed as it is to preserve a fundamental right protected by the due process provisions of the constitution.

While we have discussed the scope of coram nobis in a number of

[4]State ex rel. Moriarty v. Tahash, 261 Minn. 426, 429, 112 N. W. (2d) 816, 819.

[5]State ex rel. Hines v. Tahash, 263 Minn. 217, 225, 116 N. W. (2d) 399, 404.

recent cases, a great deal of misunderstanding of its purpose continues. In order to abate the persistent flow of futile petitions and to conserve the time and energy of trial and appellate courts whose dockets are already crowded, we believe it is appropriate to comment in some detail on what has previously been said on this subject.

Much of the need for resorting to coram nobis has been obviated by the adoption of postconviction remedies in American judicial systems.[6] The common law did not authorize a new trial in felony cases for any reason. Errors of *law* could be corrected only by the judge's recommendation for a pardon, or by appeal. Errors of *fact* at one time could not be corrected by any judicial device. In either case there were no means by which a court could rectify its own mistakes.[7] To relieve litigants, both civil and criminal, from judicial wrongs for which there was no remedy, Chancery as early as the 16th century authorized and issued writs of "quae coram nobis resident" (or "vobis," depending on the court[8]), literally, "which things remain before us."[9] Originally it was used to permit courts to correct only their own errors of fact in very limited situations. A much-quoted passage from 2 Tidd, Practice (4 Am. ed.) p. 1137,[10] states:

"If a judgment in the King's Bench be erroneous in matter of fact only, and not in point of law, it may be reversed in the *same* court, by writ of error coram nobis, or quae coram nobis resident; so called, from its being founded on the record and process, which are stated in the writ to remain in the court of the lord the king, before the king himself; as where the defendant, being under age, appeared by attorney, or the plaintiff or defendant was a married woman at the

---

[6]See, 24 C. J. S., Criminal Law, § 1606(3).

[7]Sanders v. State, 85 Ind. 318, 324, 329; 37 Harv. L. Rev. 744; 38 Ore. L. Rev. 158; Frank, Coram Nobis (1953) p. 1; People v. Reid, 195 Cal. 249, 255, 232 P. 457, 460, 36 A. L. R. 1435, 1439.

[8]State v. Kubus, 243 Minn. 379, 381, note 3, 68 N. W. (2d) 217, 218, note 1; Jaques v. Cesar (1668) 2 Saunders 100, note 1.

[9]People v. Reid, 195 Cal. 249, 254, 232 P. 457, 459, 36 A. L. R. 1435, 1438.

[10]United States v. Morgan, 346 U. S. 502, 507, note 9, 74 S. Ct. 247, 250, 98 L. ed. 248, 254; Frank, Coram Nobis, p. 3.

time of commencing the suit, or died before verdict, or interlocutory judgment: for error in fact is not the error of the judges, and reversing it is not reversing their own judgment. So, upon a judgment in the King's Bench, if there be error in the process, or through the default of the *clerks,* it may be reversed in the same court, by writ of error coram nobis: * * *."

During the 17th and 18th centuries the writ received scant attention but appears to have been revived by mid-19th century in both state and Federal jurisdictions.

What has become a leading state court decision is Sanders v. State, 85 Ind. 318 (1882). In that case, on advice of counsel and to permit the defendant to be removed to the comparative safety of the state prison as an escape from the threat of violence from a mob, defendant pled guilty to murder. All that troubled the Indiana Supreme Court was whether it had power to act, in the absence of any errors of law, under its appeal statute, and after the time to move for a new trial had expired. The court looked to the common law and seized on the writ of coram nobis, holding (85 Ind. 330) "[t]he application of the appellant brings to the knowledge of the court a fact which, if known, would have prevented a conviction; and all the cases agree that where a new fact is suggested which would have prevented judgment, the accused is entitled to the writ coram nobis."

The Kentucky court, in overruling prior decisions which denied the writ, stated that its real purpose was to revest the court with jurisdiction in an "extreme emergency." Anderson v. Buchanan, 292 Ky. 810, 819, 820, 168 S. W. (2d) 48, 53. The court held:

"We, therefore, concur with the views of the Supreme Court of Indiana and its conclusion that the court in which a conviction was had has discretion to grant the writ where it appears that but for alleged false testimony or undiscovered evidence of such a conclusive character that the verdict most probably would not have been rendered and there is strong probability of a miscarriage of justice unless the process be granted. * * * It is to be emphasized also that obtaining the writ is not a matter of right but the granting of it is a matter of sound judicial discretion to be exercised upon a showing of reasonable certainty."

A caustic dissent characterized the writ of coram nobis as (292 Ky. 822, 168 S. W. [2d] 55) "the wild ass of the law which the courts cannot control. It was hoary with age and even obsolete in England before the time of Blackstone, and courts who attempt to deal with it 'become lost in the mist and fog of the ancient common law.' "

The Wisconsin court reviewed the history of coram nobis in In re Ernst, 179 Wis. 646, 653, 192 N. W. 65, 67, 30 A. L. R. 681, 686, emphasizing that the issuance of the writ was discretionary but concluding that—

"* * * the designed relief embraced in the original forms are still available under our modern practice, serving the purpose of protecting certain fundamental and inalienable rights with respect to life, liberty, and property, and affording, pursuant to the maxim of the common law, a remedy wherever there is a wrong."

A California case which collected the earlier authorities granting relief in a variety of situations was People v. Reid, 195 Cal. 249, 232 P. 457, 36 A. L. R. 1435. The court refused, however, to review an irregularity involving alleged misrepresentation to the jury of defendant's maximum punishment, which the court said could have been raised by a motion for a new trial or in a statutory appeal. A later California decision, People v. Fowler, 175 Cal. App. (2d) 808, 346 P. (2d) 792, restricted the issuance of coram nobis to cases where defendant has shown that the facts on which he relies were not known to him, or could not have been discovered, at an earlier date. The court stated that in order to overcome the presumption that the conviction was valid a preponderance of strong and convincing evidence that defendant was deprived of substantial rights is required. See, also, People v. O'Neal, 22 Cal. Rptr. 641.

Turning to the Federal decisions, an early landmark was United States v. Plumer (C. C. D. Mass.) 27 Fed. Cas. 561 (No. 16,056). After considering the authorities the court concluded it had no right to issue the writ after sentence in the ordinary situation but added (27 Fed. Cas. 574):

"* * * Extreme cases may be imagined where the court would be justified in exercising that extraordinary power, as if it appeared that

the act of congress under which the indictment was drawn had been repealed, or if it appeared in a case like the present that the person alleged to have been killed was in full life."

The United States Supreme Court cited the Plumer case and quoted Tidd in United States v. Mayer, 235 U. S. 55, 68, 35 S. Ct. 16, 19, 59 L. ed. 129, 135, and added (235 U. S. 69, 35 S. Ct. 19, 59 L. ed. 136):

"* * * even if it be assumed that in the case of errors in certain matters of fact, the district courts may exercise in criminal cases—as an incident to their powers expressly granted—a correctional juris-diction at subsequent terms analogous to that exercised at common law on writs of error coram nobis (See Bishop, New Crim. Pro., 2d ed., § 1369), as to which we express no opinion, that authority would not reach the present case. This jurisdiction was of limited scope; the power of the court thus to vacate its judgments for errors of fact existed, as already stated, in those cases where the errors were of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid. In cases of prejudicial misconduct in the course of the trial, the misbehavior or partiality of jurors, and newly discovered evidence, as well as where it is sought to have the court in which the case was tried reconsider its rulings, the remedy is by a motion for a new trial (Jud. Code, § 269)—an application which is addressed to the sound discretion of the trial court, and, in accordance with the established principles which have been repeatedly set forth in the decisions of this court above cited, cannot be entertained, in the absence of a different statutory rule, after the expiration of the term at which the judgment was entered."

Thirty-four years later the Court of Appeals of the 7th Circuit in considering an application for coram nobis held it inappropriate for two important reasons. United States v. Moore (7 Cir.) 166 F. (2d) 102, 104. First, the defendant had failed to show by his petition that he had a valid defense or that he was innocent of the charge. Second, he neglected to present his claim with reasonable diligence.[11] The court made the following cogent observation (166 F. [2d] 105):

---

[11]See, Annotation, 62 A. L. R. (2d) 432.

"The reasons which support the rule requiring diligence seem obvious. The Government must assert its cause of action against the defendant within a limited time; and, after judgment, especially upon a plea of guilty, it may naturally assume that the transaction is closed and rely upon finality of the judgment. Consequently, there is no reason for longer preserving evidence and maintaining contact with witnesses. Law enforcement officials change, witnesses die, memories grow dim. The prosecuting tribunal is put to a disadvantage if an unexpected retrial should be necessary after long passage of time. Of course, these considerations should not work to the disadvantage of a defendant who acts promptly, but if, after knowledge of the facts relied upon, he wilfully delays the assertion of his rights to the disadvantage of the Government, the result may often be not the granting a new trial to a defendant but the practical denial of any support for the Government to prosecute its action."

The same year the Moore case was decided Congress adopted 28 USCA, § 2255, a "modern substitute for the ancient common law writ of error coram nobis,"[12] at the request of the Federal Judicial Conference. It was designed to correct some of the abuses stemming from the issuance of writs of habeas corpus.[13] In effect it permits the sentencing court to review an attack on its own criminal judgment instead of burdening the court having jurisdiction in the vicinity where defendant is confined. However, the remedy is only available where the sentence is imposed in violation of the Federal laws or constitution, or the court is without jurisdiction, or the sentence exceeds the statutory maximum or is otherwise subject to collateral attack. Motions under § 2255 may be entertained and decided without requiring that the prisoner be produced at the hearing.

In United States v. Hayman, 342 U. S. 205, 72 S. Ct. 263, 96 L. ed. 232, the history and purposes of the act are fully discussed. Basically it is designed to afford an extraordinary postconviction remedy in

---

[12]United States v. Calp (D. Md.) 83 F. Supp. 152, 153.

[13]Ibid.; United States v. Hayman, 342 U. S. 205, 218, 72 S. Ct. 263, 271, 96 L. ed. 232, 241. For a discussion of the relation between habeas corpus and coram nobis, see 34 Cornell L. Q. 596.

the jurisdiction where defendant was sentenced and where all the files, records, and witnesses are located, rather than requiring them to be transported to the jurisdiction where defendant is institutionalized.

"The main disadvantages of the motion remedy are as follows: The risk during or the expense of transporting the prisoner to the District where he was convicted; and the incentive to file baseless motions in order to have a 'joy ride' away from the prison at Government expense."[14]

Finally in 1953 the United States Supreme Court was faced squarely with the question of whether a motion in the nature of a writ of error coram nobis was a common-law remedy still available in the Federal system. In United States v. Morgan, 346 U. S. 502, 74 S. Ct. 247, 98 L. ed. 248, defendant was no longer in custody and hence could not proceed under 28 USCA, § 2255. Defendant challenged his conviction on the ground he had been unconstitutionally denied counsel while a minor. In determining the court's right to issue the writ, the Supreme Court noted (346 U. S. 507, 511, 74 S. Ct. 250, 252, 98 L. ed. 254, 256):

"The writ of coram nobis was available at common law to correct errors of fact. It was allowed without limitation of time for facts that affect the 'validity and regularity' of the judgment, and was used in both civil and criminal cases. * * * It has been used, in the United States, with and without statutory authority but always with reference to its common-law scope * * *.

* * * * *

"Continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice. There are suggestions in the Government's brief that the facts that justify coram nobis procedure must have been unknown to the judge. Since respondent's youth and lack of counsel were so known, it is argued, the remedy of coram nobis is unavailable.

---

[14]United States v. Hayman, 342 U. S. 205, 217, note 25, 72 S. Ct. 263, 271, 96 L. ed. 232, 241.

One finds similar statements as to the knowledge of the judge occasionally in the literature and cases of coram nobis. Such an attitude may reflect the rule that deliberate failure to use a known remedy at the time of trial may be a bar to subsequent reliance on the defaulted right. * * *

"* * * It is presumed the proceedings were correct and the burden rests on the accused to show otherwise."

In Minnesota we have discussed the scope of coram nobis by reference to the following rule laid down in New England Furniture & Carpet Co. v. Willcuts (D. Minn.) 55 F. (2d) 983, 987, a civil case:

"* * * In modern practice, the writ of error coram nobis may be defined as a common-law writ issuing out of a court of record to review and correct a judgment of its own relating to some error in fact as opposed to error in law, not appearing on the face of the record, unknown at the time without fault to the court and to the parties seeking relief, but for which the judgment would not have been entered."

If the petition fails to state an error of fact which, if brought to the attention of the court, could have led to a different judgment, it is insufficient to invoke the writ.[15] Errors of law may not be reviewed by the writ[16] since they are a part of the record and not extrinsic to it. Although there is no statute of limitation governing coram nobis, petitioner must pursue his rights with reasonable diligence or they are barred.[17] Coram nobis is not available to question excessive bail; the adequacy of counsel; the right to a preliminary hearing or a speedy trial; the validity of a prior conviction; or the right to a new trial based on newly discovered evidence.[18] It is not a substitute for ap-

[15]State v. Kubus, 243 Minn. 379, 382, 68 N. W. (2d) 217, 219, certiorari denied, 349 U. S. 959, 75 S. Ct. 889, 99 L. ed. 1282.

[16]State ex rel. Hammond v. County of Hennepin, 256 Minn. 539, 542, 99 N. W. (2d) 452, 455.

[17]State ex rel. Gaulke v. County of Winona, 259 Minn. 183, 186, 106 N. W. (2d) 560, 562, certiorari denied, 365 U. S. 848, 81 S. Ct. 816, 5 L. ed. (2d) 816.

[18]State v. Castle, 260 Minn. 293, 294, 109 N. W. (2d) 593, 595.

peal,[19] and where defendant has had the assistance of competent counsel it will not ordinarily issue on the unsupported allegation that a plea of guilty was induced by misrepresentation, trickery, duress, or coercion,[20] it being the defendant's right and duty to call such matters to the court's attention at the time of sentencing, more particularly so when the sentence does not conform to what defendant alleges he was promised.

Applying the rules which have evolved here and elsewhere in the application of coram nobis to criminal cases, it is first of all obvious that defendant seeks a review, not on the profession of his innocence or on the strength of facts which would likely change the outcome, but on claims of procedural or tactical irregularities wholly unrelated to his guilt or innocence. Such matters are only reviewable by statutory appeal and usually are waived by a plea of guilty, unless they affect fundamental rights so basic that they deny defendant due process and deprive the court of jurisdiction.

While a plea of guilty induced by a promise of leniency does not necessarily constitute a simple irregularity, in the instant case the petition does not allege that such a promise was made. It only asserts that there was an assurance by the prosecutor that he had no objection to a suspended sentence. There is no showing that the prosecutor was in any way guilty of duplicity or a breach of his word.

We therefore hold that the petition fails to state a prima facie case for the issuance of a writ of error coram nobis. No compelling circumstances have been alleged which require an extraordinary remedy to achieve justice. The defendant has not sustained his burden of overcoming the presumption that the judgment was valid, nor did the court abuse its discretion in ruling on the petition without a hearing. The order denying the writ is therefore affirmed.

Affirmed.

---

[19]State v. Pederson, 262 Minn. 568, 115 N. W. (2d) 466. For cases dealing with coram nobis after affirmance, see Annotation, 145 A. L. R. 818.

[20]State v. Becker, 263 Minn. 168, 115 N. W. (2d) 920.