## STATE v. HERMAN EVALD OLSON.

120 N. W. (2d) 311.

March 8, 1963—No. 38,628.

*Herman Evald Olson*, pro se, for appellant.

*Walter F. Mondale*, Attorney General, *Charles E. Houston*, Solicitor General, and *Don J. Callaghan*, County Attorney, for respondent.

OTIS, JUSTICE.

Appeal from an order of the District Court of Faribault County, dated October 11, 1961, denying appellant's petition for a writ of habeas corpus ad prosequendum (designed to bring him before the court from the State Prison) and denying his petition for a writ of error coram nobis.

On December 4, 1958, appellant pled guilty to two separate charges of forgery in the second degree and was sentenced to concurrent terms, not exceeding 10 years each, in the State Prison.[1] Execution of the sentences was stayed and appellant was placed on probation. On March 19, 1959, the stay was revoked upon a finding by the court that appellant had violated the terms of probation by again cashing forged checks, by using intoxicants, and by failing to

---

[1] We note parenthetically that these sentences follow an unfortunate pattern, observed in a number of appeals, whereby unduly severe sentences are imposed for the apparent purpose of discouraging probation violations.

report his whereabouts. Appellant was committed to prison where he remains confined.

The record indicates that initially appellant was specifically charged with forging the name of his father, Anton M. Olson, to two checks drawn to the order of appellant, Herman Evald Olson, on the Farmers State Bank of Hartland. One check was in the sum of $97.50, dated March 8, 1957, and the other in the sum of $65, dated March 20, 1957. Counsel was appointed to represent appellant, and at least three times he conferred with his client before a plea of guilty was entered.

The petition for a writ of error coram nobis alleges that subsequent to appellant's conviction his father died; that among his possessions were found a number of checks similar to those which appellant was accused of forging; that their existence was previously unknown to appellant; and they now afford a basis for reopening the prosecution to prove appellant's lack of intent to commit the crime.

It is appellant's contention that for 7 or 8 years he had engaged in a joint farming operation with his father, and on a number of occasions, with his father's knowledge and consent, signed Anton Olson's name to checks such as those which are the subject of this prosecution, and reimbursed him from time to time out of profits from their farm. Appellant claims he advised his attorney of these arrangements. This allegation is vigorously denied in counsel's answering affidavit. There is no claim, however, that the father and son were still in business when these particular checks were written in 1957.

The only questions before us are whether the petition states a prima facie case for the issuance of the writ, and whether it was an abuse of discretion to deny it without permitting appellant to appear in court.

Dealing with the second question first, it should be noted that appellant was ably represented by counsel at the hearing on the petition. He was permitted to, and did, fully develop the questions of fact and law advanced by his client. In view of the thorough presentation made on his behalf by counsel, we hold it was not an abuse of discretion to conduct the hearing without requiring appellant to be present.

While our disposition of appellant's claims hinges on the sufficiency or insufficiency of his petition, we cannot blind ourselves to the fact that when appellant was convicted his father was living and available for examination. He alleges his father was seriously ill at that time, but there is no showing either that he was unable to come forward by deposition on his son's behalf or that any request was made to the court otherwise to elicit and preserve the father's testimony. If the arrangements and understanding which appellant claims existed had any substantial basis in fact, it is inconceivable that the father, however ill he may have been, would permit his son to be condemned to prison without making some effort to vindicate him. Although Anton Olson was not the actual complainant, in either charge, the prosecutions for forgery of his name could not have proceeded without at least his tacit permission. It seems apparent to us that he was an indulgent father who tolerated his son's derelictions until it became obvious that further temporizing was futile.

The fact that appellant waited almost 3 years before petitioning the court to vacate his convictions, during which time the one person who could impeach or corroborate his testimony had died, justified the court in denying the writ. The vice of entertaining belated and untimely petitions was fully discussed in State v. Tellock, 264 Minn. 185, 194, 118 N. W. (2d) 347, 351.

Here appellant asserts that the existence of checks which he himself previously drew is newly discovered exculpatory evidence which warrants his resorting to coram nobis. We do not agree. Appellant does not show why the checks could not have been produced when he was arraigned, nor does he indicate, except by his own naked assertion, how they would have exonerated him.

The granting or withholding of relief by writ of error coram nobis is a matter which is almost entirely within the discretion of the trial court. It is an extraordinary remedy permitted only in those unusual situations where a miscarriage of justice would likely result from its denial. No case in Minnesota has moved the supreme court to authorize its use. Although our recent decisions[2] have foreshadowed its

---

[2] State v. Tellock, *supra.*

eventual sanction in appropriate circumstances, the instant case does not lend itself to such an adjudication.

Affirmed.

MR. JUSTICE SHERAN, not having been a member of this court at the time of the submission, took no part in the consideration or decision of this case.